# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL BROOKS,

        Plaintiff-Appellee,

v

GENESEE COUNTY, MICHAEL
TOCARCHICK, and CHRISTOPHER
SWANSON,

        Defendants-Appellants.

UNPUBLISHED
July 13, 2017

No. 330119
Genesee Circuit Court
LC No. 13-101423-CZ

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

This lawsuit arises out of claims made under the Whistleblowers' Protection Act ("WPA"), MCL 15.361 *et seq*., and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq*. Prior to filing this lawsuit, plaintiff, Paul Brooks, was employed as a deputy with the Genesee County Sheriff's Department. During his employment, what plaintiff refers to as a "gag order" was imposed that prohibited him, as well as his colleagues, from discussing a criminal investigation involving another colleague ("the Chatterson matter"). Plaintiff's employment was suspended when it was determined that he repeatedly and admittedly violated this "gag order" in significant ways, and he eventually quit and sued as a result. Defendants, Genesee County, Michael Tocarchick, and Christopher Swanson, moved for summary disposition pursuant to MCR 2.116(C)(10), as well as on other grounds, but the trial court denied that motion and partially granted summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(I). In denying defendants' motion and partially granting summary disposition in favor of plaintiff, the trial court explained, *in full*, as follows:

> So in any event here a number of claims have been advanced, Whistleblower case, Elliot-Larsen Civil Rights claims, it appears to the Court first of all, I want to just indicate I do think the <u>Florence versus DSS</u> case 215 Mich App 211 particularly pages 214 and 15 preclude any summary disposition based on collateral estoppel on any kind of issue precludes him based on the application hearing. And I do believe that as evidenced on the record to support Whistleblower claims on behalf of the plaintiff against the defendants and also the Elliott-Larsen Civil Rights Act it is really actually substantial evidence I'm going

-1-

to go that far to say and I think as to this whistleblower Type II I should grant summary disposition to plaintiff in liability only.

* * *

So denying the defendant's motion for summary and granting plaintiff's in part only. Thank you.

Defendants now appeal by leave granted that order, *Brooks v Genesee County*, unpublished order of the Court of Appeals, entered June 15, 2016 (Docket No. 330119), arguing that circuit court erred by denying their motion for summary disposition and by partially granting summary disposition in plaintiff's favor. We agree. Consequently, we reverse and remand for the entry of an order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10).

"The proper interpretation of a statutory provision is a question of law that this Court reviews de novo." *Brown v Mayor of Detroit*, 478 Mich 589, 593; 734 NW2d 514 (2007).

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. The first step is to review the language of the statute. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible. [*Id*.]

Likewise,

[w]e review a trial court's decision on a motion for summary disposition de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all the evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition should be granted only where the evidence fails to establish a genuine issue regarding any material fact. . . . [*Shaw v Ecorse*, 283 Mich App 1, 7; 770 NW2d 31 (2009) (citations omitted).]

First, defendants argue that they were entitled to summary disposition with respect to each of plaintiff's WPA claims. We agree.

The pertinent issue before this Court is whether plaintiff has stated a viable claim under the WPA. The applicable provision of the WPA, MCL 15.362, states the following:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the

-2-

> employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.
>
> This provision protects an employee who has reported, or is about to report, a violation or suspected violation of a law to a public body. To establish a prima facie case under MCL 15.362, a plaintiff must show that "(1) the plaintiff was engaged in protective activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." [*Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016) (internal citations and quotation marks omitted).]

In this case, plaintiff raises claims as both a "type 1 whistleblower" and "type 2 whistleblower." This Court has "interpret[ed] a type 1 whistleblower to be one who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation," i.e., "as initiators[.]" *Henry v Detroit*, 234 Mich App 405, 410; 594 NW2d 107 (1999). This Court has interpreted a type 2 whistleblower to be one "who participate[s] in a previously initiated investigation or hearing at the behest of a public body." *Id.*

In our view, the trial court erred by denying defendants' motion for summary disposition with respect to each of plaintiff's WPA claims. As it relates to his claim or claims as a type 1 whistleblower, plaintiff's amended complaint vaguely identifies the conduct that he claims constituted protected activity under the WPA. He asserts that "[d]efendants herein took adverse employment actions against Paul Brooks, Plaintiff, because he reported a violation or suspected violation of important laws, rules and regulations to a public body, and, in fact, was about to report violations and/or suspected violations in open Court." He elaborates, "Most of this protected activity arose out of incidents and events that occurred in the case of *People v Chatterson*."

In his subsequent briefing and in his brief on appeal, it appears that plaintiff narrows this claim to his disagreement with the "gag order" that was apparently imposed by defendant Genesee County or defendant Tocarchick. Specifically, he argues the following on appeal:

> As indicated, Brooks did not agree with the **scope** of the gag order. Thus, every time he told Defendant Tocarchick during the internal investigations that he violated the order he was "raising the spectre" [sic] that this "gag order" – Defendants [sic] own policy – was in violation or was a suspected violation of the law (obstruction of justice, witness intimidation and Sixth Amendment). [Emphasis in original.]

The "As indicated" introductory phrase appears to be a reference to plaintiff's own testimony that he felt "targeted because [he] was on a witness list and . . . wasn't on their side" and did not agree with "the scope of the order[.]" We do not agree that the activity identified by plaintiff in this regard constituted protected activity under MCL 15.362. Plaintiff's disagreement with and admittedly repeated violations of the "gag order" do not constitute reports to a public body of

violations or suspected violations of law. Instead, they constitute precisely what they are—admissions by plaintiff that he did, in fact, violate the "gag order," apparently because he disagreed with it or its scope. Defendants were entitled to summary disposition pursuant to MCR 2.116(C)(10) with respect to this specific claim.

In his subsequent briefing and in his brief on appeal, plaintiff also points to statements he made to an attorney and that attorney's wife as activity that qualifies him as a type 1 whistleblower. He apparently told one or both of them "that one of the female witnesses during the preliminary exam in the Chatterson matter had admitted and laughed about committing perjury." (Emphasis in original.) It appears that plaintiff did, in fact, make these statements to the attorney or the attorney's wife, which would, generally, qualify it as a protected activity under the WPA. See *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 21-23; 891 NW2d 528 (2016). However, because plaintiff has not offered any evidence, direct or indirect, to support the causation element of his claim, summary disposition pursuant to MCR 2.116(C)(10) with respect to this specific claim was appropriate. Stated simply, the record is clear in that defendants had a legitimate reason for adverse employment actions that were taken against plaintiff—specifically, plaintiff repeatedly and admittedly violated the "gag order" at issue a variety of times in significant ways. It is clear that, under the burden-shifting framework that applies to claims like plaintiff's, once a defendant offers a legitimate reason for its action or actions, the issue comes down to whether "a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action." *Debano-Griffin v Lake County*, 493 Mich 167, 176; 828 NW2d 634 (2013). On the record before us, one could not. Plaintiff does not identify *any* direct evidence in support of his claim, and, in terms of indirect evidence, he, at best, literally speculates that one seemingly ordinary question by defendant Tocarchick, asking plaintiff why he was on the attorney's witness list in the Chatterson matter, supports the inference that he was being intimidated. This type of speculation is insufficient to survive a motion for summary disposition. See, e.g., *Shaw v Ecorse*, 283 Mich App 1, 40; 770 NW2d 31 (2009). Defendants were entitled to summary disposition pursuant to MCR 2.116(C)(10) with respect to this specific claim as well.

Therefore, we conclude that the circuit court erred in denying defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's claims as a type 1 whistleblower.

We reach the same conclusion with respect to plaintiff's claims as a type 2 whistleblower as well. In his amended complaint, plaintiff identifies the fact that adverse employment action was taken in response to his violations of the "gag order" and the fact that "Defendants" apparently asked one of plaintiff's colleagues "to engaged [sic] in an illegal conspiracy to falsely accuse Plaintiff Paul Brooks of having committed a crime[.]" In his brief on appeal, defendant elaborates on what appear to be two allegations of protected activity with respect to his claims as a type 2 whistleblower. He claims that he "was wrongfully disciplined for being requested by [the attorney discussed above] to participate as a witness in a criminal trial by virtue of a subpoena served on Brooks' employer." (Footnote omitted.) He claims that "the law and record evidence *easily* supports not only the Circuit Court's denial of Defendants' MSD but the granting of Plaintiff's Motion for Partial Summary Disposition on this claim." (Emphasis in original.) The second type of activity with respect to his claims as a type 2 whistleblower involves his, or at least his requested, participation in the investigation in the Chatterson matter in general.

Even if we assume, *without deciding*, that this activity constitutes protected activity under MCL 15.362, plaintiff still has not provided anything more than speculation with respect to the causation element of his claims. The fact that he apparently suffered an adverse employment action, which is a fact no party contests, is not, in and of itself, proof of causation. Plaintiff claims that it is apparent that "Defendant Tocarchick was displeased," that defendants Tocarchick and Swanson played a role in the adverse employment action, that the "gag order" was enforced selectively, that he was mistreated for being "disloyal," that the "gag order" was illegal, that defendants were being unreasonable, and "it [sic] a 100% subjective rule in its application." (Footnote omitted.) Stated simply, these assertions of apparent facts do not generate a question of fact with respect to plaintiff's claims as a type 2 whistleblower. Likewise, the fact that defendants allegedly relied on admissions plaintiff made during the investigation in the Chatterson matter does not automatically establish causation as he claims. For example, plaintiff points to the fact that he admitted violating the "gag order" during the investigation, but it was his violation of the "gag order," not the fact that he admitted it during the investigation, that led to the adverse employment action at issue in this case. Had plaintiff merely reported a violation or suspected violation of law to a public body during the investigation, our conclusion would obviously be different. But, he did not. Additionally, we disagree with plaintiff's contentions that reaching such a decision requires us to ignore a variety of binding authority and hold that he be a perfect employee at all times. Instead, our decision merely reflects the law as it stands, and the law requires more than mere speculation to overcome a motion for summary disposition. Plaintiff has not presented more than mere speculation in this case. Moreover, plaintiff's attempts to create genuine issues of material fact from completely irrelevant factual "disputes," i.e., him denying that he is a liar when someone calls him a liar, have no impact on our conclusion.

Therefore, we conclude that the circuit court erred in denying defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's claims as a type 2 whistleblower as well.

Finally, we feel it necessary to briefly note that our decision in this regard does not mean that we condone discharging employees for refusing to do something illegal. In his brief on appeal, plaintiff contends that being ordered not to discuss the Chatterson matter was akin to being "ordered . . . to shoot any black person he sees without reason[.]" We, unsurprisingly, do not find this comparison appropriate. Plaintiff was ordered not to discuss an ongoing criminal case involving one of his colleagues. He admittedly and repeatedly violated that order. It appears that the essence of plaintiff's position is that, by violating that order, he reported a violation or suspected violation of law to a public body, but he does not cite, and we are unable to find, any authority to support such a position. Consequently, his position must fail. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).

Accordingly, because defendants were entitled to summary disposition with respect to MCR 2.116(C)(10) with respect to plaintiff's claims as a type 1 and a type 2 whistleblower, the trial court erred by denying defendants' motion for summary disposition and by partially granting summary disposition in plaintiff's favor with respect to those claims.

Second, defendants argue that they were entitled to summary disposition with respect to plaintiff's ELCRA claims. We agree.

-5-

"The [EL]CRA, in part, prohibits an employer from discriminating against an employee or an individual in an apprenticeship or training program on the basis of sex or age with respect to term, condition, or privilege of employment." *Major v Village of Newberry*, 316 Mich App 527, 534-535; 892 NW2d 402 (2016). In this case, plaintiff claims that he was discriminated against on the basis of his gender. Specifically, he claims that he was discriminated against on the basis of his gender as a male because female employees were "[p]ermitt[ed] and/or allow[ed] . . . to talk to witnesses during an investigation without repercussions," because he was "[t]reat[ed] . . . differently than other similarly situated employees who did not speak up against violations of women's civil rights, especially when it came to terms and conditions of employment," because his schedule was changed "to accommodate women and harass him," and because he was "constructive[ly]" fired.

Plaintiff's ELCRA claims are brought under a disparate treatment theory, which requires that he "present sufficient evidence to permit a reasonable juror to find that for the same or similar conduct [he] was treated differently from a similarly situated" employee of a different gender to survive a motion for summary disposition. *Duranceau v Alpena Power Co*, 250 Mich App 179, 182; 646 NW2d 872 (2002). As part of proving that he was treated differently from a similarly situated employee of a different gender, plaintiff must demonstrate that the relevant aspects of his employment were identical or nearly identical to those of his female counterparts. *Campbell v Dep't of Human Servs*, 286 Mich App 230, 248; 780 NW2d 586 (2009). Here, plaintiff claims that because he and three female deputies "all engaged in conversations which violated the (illegal) 'gag order,' " they were similarly situated. But, he claims, he was the only one to be disciplined. However, the record reflects that the female deputies' "conversations" about the case were not remotely similar to those of plaintiff.

For example, one deputy, *who was a victim in the Chatterson matter*, had asked a person who answered her phone call to the court about a scheduled court date. With regard to a second deputy, *who was also a victim in the Chatterson matter*, she allegedly mentioned the matter after plaintiff initiated a conversation about the topic, responding that she had also heard when a settlement conference was scheduled. Finally, the third deputy allegedly informed other deputies regarding when the Chatterson matter was on the docket in hopes of alerting them that former employees may be entering the building. Plaintiff, on the other hand, admittedly and repeatedly continued talking to a variety of individuals about the Chatterson matter. He spoke with an attorney involved in that matter, going as far as to discuss witness lists with that attorney; he discussed the matter with the presiding judge; he made disparaging comments about who the victim or victims had previously slept with; he spoke with another deputy about how the department would seek to settle the case in hopes of preventing its "dirty laundry" from becoming public; and he spoke to at least one other individual about the matter on multiple occasions. Thus, it is obvious that he and the three identified female deputies were not similarly situated. His position on appeal relies on the fact that all four of them violated the "gag order," contending that the fact that he did so to a more significant degree should not matter. Theoretically, that argument seems sound, but it completely ignores the fact that, to avoid summary disposition on an ELCRA claim under a disparate impact theory, the employees must be similarly situated, and it is quite apparent that, here, they are not. Consequently, defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's disparate treatment claim under ELCRA should have been granted.

To the extent plaintiff's complaint could be construed as raising a claim of retaliation under the ELCRA, we conclude that summary disposition should have been granted with respect to those as well. Pursuant to MCL 37.2701(a), a person shall not "[r]etaliate . . . against a person because the person has opposed a violation of [ELCRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." "A prima facie case of retaliation can be established if a plaintiff proves: (1) that he was engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Pena v Ingham County Rd Comm*, 255 Mich App 299, 310-311; 660 NW2d 351 (2003). Stated simply, a "[p]laintiff cannot prevail on a claim of retaliation in violation of [ELCRA] without establishing that he engaged in activity protected under the act." *Barrett v Kirtland Comm College*, 245 Mich App 306, 318; 628 NW2d 63 (2001). In this case, plaintiff has not done that. Rather, he merely claims that by admittedly having conversations about the Chatterson matter with the female deputies and later being subject to discipline, he sufficiently "rais[ed] the specter of a claim of unlawful discrimination." This is not sufficient to survive a motion for summary disposition. See *Barrett*, 245 Mich App at 319 (providing that "an objective employer could not conclude that plaintiff was raising the specter of a claim pursuant to the [EL]CRA" when "the evidence merely established that plaintiff was asserting generic, non-sex-based complaints regarding his working conditions and that those complaints were not based on sex").

Relatedly, to the extent plaintiff's complaint identified a claim of discrimination based on a hostile work environment under ELCRA, summary disposition is appropriate with respect to that claim as well. First, plaintiff's argument that "[d]efendants never addressed [this] in their Appeal" is factually incorrect and, therefore, meritless. In any event, there are five elements that are needed to establish a prima facie claim such as this:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Downey v Charlevoix County Bd of Rd Comm'rs*, 227 Mich App 621, 629; 576 NW2d 712 (1998).]

Plaintiff's claim in this regard is apparently based on his gender, and, as we described above, the record does not contain any evidence to support his claim that he was treated differently from similarly situated females. Rather, he merely speculates that he "was singled out" and that female deputies apparently were not. In fact, the only instance he specifically points to in his brief on appeal to support this claim is when he was allegedly "set up for a false felony charge," a fact that he apparently learned after leaving his employment as a deputy with the Genesee County Sheriff's Department.

Accordingly, because defendants were entitled to summary disposition with respect to MCR 2.116(C)(10) with respect to plaintiff's ELCRA claims, the trial court erred by defendants' motion for summary disposition with respect to those claims.

In sum, our review of the record reflects that plaintiff has simply not presented anything more than speculation in his attempts to avoid summary disposition with respect to his WPA and ELCRA claims. As stated above, speculation is not enough. The trial court failed to recognize this. Instead, in a cursory analysis, it merely awarded plaintiff relief without explanation. Its decision to do so was erroneous. Accordingly, we reverse the trial court's order denying defendant's motion for summary disposition and partially granting summary disposition in plaintiff's favor and remand for the entry of an order granting summary disposition to defendants in full.

Reversed and remanded. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens